# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

DEVIN NOLCOX,               )   CASE NO. 1:17-cv-02655
                          )
      Plaintiff,          )
                          )
          v.            )   MAGISTRATE JUDGE DAVID A. RUIZ
                          )
NANCY A. BERRYHILL,     )
   *Acting Comm'r of Soc. Sec.*,  )   **MEMORANDUM OPINION AND ORDER**
                          )
      Defendant.      )

Plaintiff, Devin Nolcox (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 13). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. Procedural History

On January 12, 2015, Plaintiff filed his application for SSI, alleging a disability onset date of September 13, 2010. (Transcript ("Tr.") 131-136). The application was denied initially and

upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 91-106). Plaintiff participated in the hearing on November 15, 2016, was represented by counsel, and testified. (Tr. 32-62). A vocational expert ("VE") also participated and testified. *Id*. On March 8, 2017, the ALJ found Plaintiff not disabled. (Tr. 27). On November 3, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-3). On December 20, 2017, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 15, 16 & 17).

Plaintiff asserts the following assignment of error: (1) the ALJ failed to give legally sufficient reasons for rejecting limitations assessed by both treating and non-treating sources. (R. 15).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

On August 14, 2014, Plaintiff was seen by Sakthiraj Subramanian, M.D., for a physical and complained of anxiety and depression that had been present for "greater than two weeks." (Tr. 286). Plaintiff indicated he had never seen a psychiatrist. *Id*. Dr. Subramanian identified Plaintiff's problems as benign hypertension (new), anxiety (new), and palpitations (new). (Tr. 290). The doctor referred Plaintiff to a psychiatrist for the anxiety complaints. (Tr. 290).

On October 14, 2014, Plaintiff saw Dr. Subramanian for a follow-up. (Tr. 293). Plaintiff

---

[1]  The recitation of the evidence is not intended to be exhaustive and focuses primarily on Plaintiff's mental impairments. It includes only those portions of the record cited by the parties in their briefs and also deemed essential by the court to the assignments of error raised.

was "doing better and no longer has palpitations after he started to take atenolol." *Id.*

On October 20, 2014, Plaintiff was seen for the first time by Sarah Engle, M.D., a psychiatrist. (Tr. 248-254). Dr. Engle's impression was generalized anxiety disorder, panic disorder with agoraphobia, and post-traumatic stress disorder (PTSD). (Tr. 250). She noted Plaintiff had been self-medicating with marijuana daily. *Id.* She assessed a Global Assessment of Functioning ("GAF") score of 45.[2] (Tr. 251). Dr. Engle prescribed Celexa and Klonopin. (Tr. 250).

Plaintiff cancelled an appointment with Dr. Engle scheduled for January 5, 2015 and was a no show on January 26, 2015. (Tr. 254, 259, 262).

On February 2, 2015, Plaintiff was seen by nurse practitioner Julia Veres. (Tr. 261). He reported improved anxiety, decreased frequency of panic attacks, and that medication helped his mood. *Id.* Plaintiff reported abstaining from drug and alcohol use. *Id.* On February 23, 2015, Plaintiff was a "no show" for an appointment with Dr. Engle. (Tr. 262).

On March 30, 2015, Plaintiff saw Dr. Engle and reported some improvement with his anxiety symptoms. (Tr. 263-264). He also reported less frequent panic attacks. *Id.* He reported being "stressed with getting SSI renewed because [it] would help his housing situation." (Tr. 263).

---

[2] The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Ass'n, 4th ed. revised, 2000) ("DSM-IV"). An individual's GAF is rated between 0-100, with lower numbers indicating more severe mental impairments. A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *Id.* An update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity ... and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

On April 22, 2015, Plaintiff underwent an internal medicine examination with Robin Benis, M.D. (Tr. 266). With respect to activities of daily living ("ADLs"), Dr. Benis observed that Plaintiff "does occasional cleaning, laundry once per month, shopping once per month. He showers eight to ten times per week, dresses himself from eight to ten times per week. He finished high school at Beechwood High School. He attended Purdue University and is probably going to attend Cleveland State. He has worked in customer care service in the past. He was also working in music publishing in the past. Currently he is able to watch TV, listen to the radio, socialize with friends, read, and go out to the grocery stores." (Tr. 267).

On June 1, 2015, Plaintiff reported to Dr. Engle that one of his friends had passed away and he was feeling "really stressed," felt worthless, had trouble focusing, and had three to four panic attacks daily. (Tr. 276). Plaintiff was started on Prozac. (Tr. 277).

On June 11, 2015, Plaintiff had a follow-up visit with Dr. Subramanian, who noted Plaintiff's anxiety had improved on medication. (Tr. 300).

On June 30, 2015, a case worker reviewed Plaintiff's medication status with his pharmacist. (Tr. 309). Together they found that Plaintiff "struggles with compliance and consistency with medication. He didn't receive any medication in April or May and his last pick up date for his antipsychotic was 3/30/15." *Id.*

On July 10, 2015, Plaintiff again saw nurse practitioner Veres, who indicated she was taking the patient over from Dr. Engle. (Tr. 278-279). Plaintiff reported stress due three friends dying in the last month and worsening panic attacks. (Tr. 279). Ms. Veres increased Plaintiff's Prozac and Klonopin dosage. *Id.* Plaintiff denied any issues with medication adherence, reporting that he tries to take his medication. (Tr. 278).

On August 6, 2015, Plaintiff told nurse Veres that yet another friend of his died, that he had

decreased appetite and nausea, and that he was engaging in self-isolating behaviors. (Tr. 318). He reported wanting to begin counseling. (Tr. 319). His medications were continued at their current levels. *Id*.

On August 25, 2015, Plaintiff telephoned the nurse's office indicating that he had been doing well and was compliant with his medication. (Tr. 320).

On August 27, 2015, nurse Veres noted Plaintiff was pleasant but anxious with constricted affect. (Tr. 321). Plaintiff denied any depression. *Id*. She assessed major depressive disorder and recurrent moderate panic disorder with agoraphobia and PTSD. (Tr. 322). Plaintiff's Klonopin dosage remained unchanged while Prozac dosage was decreased. *Id*.

On October 2, 2015, Plaintiff reported moderate improvement in his depressive symptoms, moderate anxiety, but continued reclusive behavior. (Tr. 327-328). His medications were continued unchanged. (Tr. 328).

On November 12, 2015, Plaintiff endorsed "mild improvements in depressive/anxious [symptoms] but continues to self-isolate, avoid social interaction, struggling with ADLs, poor self-care. Denies any incidences of panic attacks since last visit." (Tr. 338). Plaintiff's Prozac was increased, but Plaintiff was unwilling to add a small dose of Wellbutrin to his regimen indicating anxiety over taking more medications. *Id*. Plaintiff again voiced a desire to start counseling. *Id*.

On December 7, 2015, Plaintiff presented to nurse practitioner Veres, who noted Plaintiff presented with "some improvements in depressive/anxious [symptoms] but remains highly anxious with notable agoraphobia, chronic panic attacks triggered by small, cramped spaces and social interaction." (Tr. 349). Nurse Veres noted that no psychotic, manic, or hypomanic symptoms were reported or evident. *Id*.

On January 7, 2016, Plaintiff reported worsening depressive and anxiety symptoms due to socioeconomic stressors and familial relationships. (Tr. 354).

On February 12, 2016, Plaintiff was seen by registered nurse Kourtney Monteiro. (Tr. 366-367). She observed Plaintiff was stable, had euthymic moods, and was easy to engage in conversation. *Id.* Plaintiff reported stable moods but noted episodes of depression/anxiety and recent panic attack a week earlier. *Id.*

On March 10, 2016, Plaintiff presented to nurse Veres as "depressed, subdued, flattened affect." (Tr. 371).

On April 8, 2016, Plaintiff reported a recent increase in panic attacks to nurse Veres. (Tr. 382).

On May 5, 2016, Plaintiff was a no show for an appointment with nurse Veres. (Tr. 392).

On September 8, 2016, Plaintiff reported to nurse Veres that he had been "out of meds for several months" and wished to restart all medications which "he perceived as working well." (Tr. 306). He also indicated a desire to restart counseling. *Id.*

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On December 9, 2014, Dr. Engle completed a mental RFC assessment form indicating she began treating Plaintiff less than two months earlier, on October 13, 2014, and saw him on a monthly basis. (Tr. 256). She indicated diagnoses of generalized anxiety disorder, panic disorder, and major depressive disorder. *Id.* She assessed a GAF score of 45 and noted that Plaintiff's prognosis was fair to good. *Id.* She was unaware of any physical medical conditions that would contribute to Plaintiff's mental impairment. *Id.* Plaintiff's treatment consisted of medication for his symptoms, though therapy had not yet been initiated. *Id.* She indicated Plaintiff's impairment had lasted or was expected to last at least twelve months. *Id.* Dr. Engle circled boxes indicating

that Plaintiff had marked limitations in his ability to travel in unfamiliar places or use public transportation due to anxiety and marked limitations in his ability to tolerate normal levels of stress. (Tr. 257). She further opined Plaintiff's symptoms would interfere with work twenty percent of the time, and he would miss four to six days of work per month. *Id*. Dr. Engle believed Plaintiff had "significant anxiety and panic attacks," making it difficult for him to interact with others or adhere to a schedule, had significant trouble focusing for sustained periods, but was cognitively intact and could manage his own funds. *Id*.

On April 9, 2015, State Agency psychologist Joseph Edwards, Ph.D., reviewed Plaintiff's medical records and indicated Plaintiff was not significantly limited or there was no evidence of limitation in most categories. (Tr. 72-74). However, he opined that Plaintiff was markedly limited in his ability to interact appropriately with the general public and moderately limited in the following areas: performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors. (Tr. 73). Dr. Edwards explained that Plaintiff "should be limited to a routine environment with non strict production standards. *May require occasional flexibility for shifts and breaks due to anxiety.*" *Id*. (emphasis added). He further noted that Plaintiff "should be limited to brief conventional contact with others and no public contact." *Id*. Dr. Edwards observed that more recent treatment revealed Plaintiff's panic and anxiety has improved, and that he "goes to appointements [sic], shops, has adequate ADL performance, socializes and maintains friendships, is self employed, and overall indicates no more than moderate levels of impairment." (Tr. 74). Therefore, Dr. Edwards believed Dr.

Engle's mental RFC questionnaire was "not supported" and ascribed it "little weight."[3] (Tr. 74, 76).

On August 14, 2015, State Agency psychologist Irma Johnston, Psy.D., reviewed the records and found Plaintiff was not significantly limited or there was no evidence of limitation in most categories. (Tr. 86-88). Her assessment largely mirrored that of Dr. Edwards. *Id.* Dr. Johnston opined that Plaintiff "can carry out simple & complex task instructions in a routine environment with non strict production standards. *May* require occasional flexibility for shifts and breaks, due to anxiety." (Tr. 87) (emphasis added). She further observed that Plaintiff "can work in a routine environment with infrequent changes and access to a supervisor for support as needed. Major changes should be explained ahead of time and implemented gradually." (Tr. 88). Dr. Johnston also noted Plaintiff's improvement, adequate activities of daily living, and ability to socialize and maintain friendships. *Id.*

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

---

[3] Per Dr. Edwards, Plaintiff's "treating source, Sarah Engle, provided an opinion regarding your condition and functional limitations; however, it was not clear nor was it supported by the preponderance of file evidence, therefore it was afforded little weight." (Tr. 76).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since November 10, 2014, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: major depressive disorder, generalized anxiety disorder, and panic disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He can perform tasks in a setting with occasional changes that can be explained in advance and implemented gradually and where there is flexibility for breaks. The claimant can perform goal oriented work but cannot work at a production rate pace. He can briefly interact with supervisors and coworkers if that interaction is limited to speaking and signaling as defined in the SCO (Selected Characteristics of Occupations), but he cannot have contact with the public.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on *** and was 29 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 10, 2014, the date the application was filed (20 CFR 416.920(g)).

(Tr. 15-26).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is

supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignment of Error**

Plaintiff's sole assignment of error takes issue with the ALJ's alleged lack of a sufficient explanation for rejecting certain functional limitations contained in the opinion of his alleged treating psychiatrist, Dr. Engle, as well as the opinions of State Agency psychologists. (R. 15, PageID# 488-498). Because there is a significant distinction between the analysis that must be afforded to treating source medical opinions versus those from non-treating sources, such as State Agency physicians or psychologists, the court addresses these arguments separately.

**1. Weight Ascribed to Treating Psychiatrist Dr. Engle**

Plaintiff asserts that the ALJ erred by violating the treating physician rule with respect to

the weight assigned to his treating psychiatrist—Dr. Engle. (R. 15, PageID# 488-498). "Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See*

*Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

As an initial matter, the court must determine whether Dr. Engle qualified as a treating physician when she rendered the December 2014 opinion. The Commissioner's brief notes that Dr. Engle saw Plaintiff only a few times during the relevant time period (R. 16, PageID# 511), and also points out the ALJ's express finding that Dr. Engle had seen Plaintiff only once before completing the form opinion in dispute. (R. 16, PageID# 509, *citing* Tr. 24). Plaintiff's brief does not contest this particular finding of the ALJ—that there was only one examination prior to the opinion—nor does it recount any additional prior treatment in the recitation of the medical evidence or elsewhere in the brief. (R.15). The court's review of the evidence has not uncovered any additional prior visits by Plaintiff to Dr. Engle, save for the one visit on October 20, 2014.

(Tr. 248-254).

Therefore, Dr. Engle did not qualify as a *treating* source at the time she rendered the opinion dated December 9, 2014. In addition, treatment rendered *after* the opinion in question was authored would be of no consequence, because "subsequent visits to [a physician] are irrelevant in determining whether the opinion was that of a treating physician *when it was completed*." *Witnik v. Colvin*, No. 14cv-257, 2015 WL 691329 at *5 (N.D. Ohio Feb. 18, 2015) (White, M.J.) (emphasis added). "The question is whether [the claimant] had the ongoing relationship with [the physician] to qualify as a treating physician *at the time he rendered his opinion*." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 506 (6th Cir. 2006) (emphasis added). In *Kornecky*, the Sixth Circuit declined to find a treating physician relationship, noting that visits to a physician *after* an assessment had been made "could not retroactively render [the doctor] a treating physician at the time of the assessment." 167 Fed. App'x at 506 n.10; *cf. Daniels v. Comm'r of Soc. Sec.*, 152 Fed. App'x 485 (6th Cir. 2005) (finding that a physician who only saw the claimant twice was not a treating physician despite the ALJ referring to the physician as such).

Because Dr. Engle was not a treating physician at the time the opinion was rendered but rather merely an examining source, the doctor's opinion is not subject to the rigors of the treating physician rule. Other courts have determined that "the regulation requiring an ALJ to provide 'good reasons' for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another." *Williams v. Colvin*, 2015 WL 5165458 at *5 (N.D. Ohio, Sept. 2, 2015) (*citing Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496 (6th Cir. 2006); *accord Chandler v. Comm'r of Soc. Sec.*, 2014 WL 2988433 at *8 (S.D. Ohio, July 1, 2014) ("the ALJ is not required to give 'good reasons' for

rejecting a nontreating source's opinions in the same way as must be done for a treating source").

While a claimant may disagree with the ALJ's explanation as to why little weight was assigned

to a non-treating medical source, such a disagreement with the ALJ's rationale does not provide

a basis for remand. *See, e.g.*, *Steed v. Colvin*, 2016 WL 4479485 (N.D. Ohio Aug. 25, 2016)

(McHargh, M.J.).

> The ALJ addressed Dr. Engle's opinions as follows:

> > Conversely, the undersigned accords little weight to the mental residual functional capacity assessment from Dr. Engle at Exhibit 3F. Dr. Engle opined that the claimant has no limitation in the ability to be aware of normal hazards and take appropriate precautions, marked limitation in the ability to travel to unfamiliar places or use public transportation, moderate limitation in the ability to set realistic goals or make plans independently of others, and marked limitation in the ability to tolerate normal levels of stress (Ex. 3F/2). Dr. Engle also stated that the claimant's impairment substantially interferes with his ability to work on a regular and sustained basis at least 20 percent of the time, he would miss work four to six days per month, and he could not work on a regular and sustained basis due to his mental impairment (Ex. 3F/2). This assessment receives little weight because it occurred after only one examination of the claimant and the record from that examination by Dr. Engle shows no clinical examination or mental status findings (Ex. 2F/6-9). Therefore, the opinion appears based entirely on the claimant's subjective complaints, rather than objective medical findings. Furthermore, the form itself is incomplete and lacks sufficient support for the vague opinions. Nevertheless, the undersigned also notes that the above RFC is consistent with many of these opinions from Dr. Engle.

(Tr. 24).

> The court finds the ALJ's decision sufficiently explains why the more limiting portions of

Dr. Engle's opinion were assessed little weight. Furthermore, assuming *arguendo* that the

treating physician rule would apply, the decision also gave sufficiently good reasons for the

weight accorded Dr. Engle. The ALJ essentially gave five reasons for rejecting Dr. Engle's more

restrictive limitations: (1) the opinion was rendered after only a single visit; (2) that lone visit

showed no clinical examination or mental status findings; (3) as a result, the opinion must have

been based entirely on the claimant's subjective complaints rather than objective medical findings; (4) the opinion was rendered in a form that is incomplete; and (5) the psychiatrist provided no support or explanation for the vague opinions. (Tr. 24).

Unless a treating source's opinion is given controlling weight, the ALJ is required to consider the following factors in deciding the weight to give any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 416.927; *see generally Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). While the ALJ is directed to consider such factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in her decision. *See Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

With respect to the length of the treatment relationship and the frequency of examination factor, the ALJ plainly found that one single visit weighed against according the opinion of Dr. Engle much weight. 20 C.F.R. § 416.927(c)(2)(i). The second reason—that Dr. Engle's sole instance of treatment showed no clinical examination or mental status findings—appears not only to be an accurate assessment of the lone visit (Tr. 248-251), but is also an appropriate factor to consider for according an opinion less weight. See 20 C.F.R. § 416.927(c)(2)(ii) ("We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed…"). The ALJ's ensuing inference, that a lack of clinical examination or mental status findings at the sole treatment visit with Dr. Engle must mean that the opinion was based on Plaintiff's subjective complaints—is not unreasonable. The ALJ noting that the form is incomplete is also a reasonable basis for ascribing less weight to the opinion.

Indeed, at least one page, if not more, appears to be missing from Dr. Engle's assessment which proceeds from question 9 to 14. (Tr. 256-257). Finally, the ALJ's observation that Dr. Engle gave no support or explanation for her vague[4] opinions is accurate. The supportability factor states that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.").[5] The form contains little more than the diagnoses, again made after only one visit, and a statement that Plaintiff has significant anxiety and panic attacks that would cause trouble interacting with others or difficulty focusing. *Id.*

Under either the treating physician rule or the less stringent rules applied to examining sources, the ALJ sufficiently set forth his reasoning for not adopting Dr. Engle's assessed limitations in their totality. As such, Plaintiff's argument to the contrary is without merit.

---

[4] None of the pages of the report contained in the record define mild, moderate, or extreme limitations, thus the limitations as assessed are indeed vague. (Tr. 256-257).

[5] Given the lack of any meaningful explanation in the questionnaire of Dr. Engle, the opinion is arguably patently deficient as stated by the Sixth Circuit Court of Appeals. *Hernandez v. Commissioner*, 644 Fed. App'x 468, 474 (6th Cir. Mar. 17, 2016) (finding that checkbox or checklist evidence was "'weak evidence' at best' and meets our patently deficient standard") (citations omitted); *accord Shepard v. Commissioner*, 705 Fed. App'x 435 (6th Cir. Sept. 26, 2017); *Toll v. Commissioner*, No. 1:16CV705, 2017 WL 1017821 at *4 (W.D. Mich. Mar. 16, 2017) ("even if the ALJ failed to provide good reasons" for assigning little weight to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis ); *Denham v. Commissioner*, No. 2:15CV2425, 2016 WL 4500713, at *3 (S.D. Ohio Aug. 29, 2016) (magistrate judge "correctly found that any error in the ALJ's consideration of Lewis' evaluation was harmless because the check-box form was so patently deficient that the Commissioner could not possibly credit it"). Because the court finds that the ALJ gave sufficiently good reasons for not adopting Dr. Engle's opinions in their entirety, it is unnecessary to determine whether Dr. Engle's opinion is so patently deficient that a violation of the treating physician rule would be tantamount to harmless error.

### 2. Weight Ascribed to the State Agency Psychologists

Plaintiff's brief concedes that the ALJ ascribed substantial weight to the opinions of the State Agency psychological consultants. (R. 15, PageID# 495). Nevertheless, Plaintiff takes issue with the ALJ not incorporating the opinion that Plaintiff "may require occasional flexibility for shifts and breaks" due to anxiety. (*Id*., Tr. 73 & 87).

With respect to State Agency physicians and psychologists, ALJs "are not required to adopt any prior administrative medical findings, but they must consider this evidence … because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." *See* 20 C.F.R. § 416.913a(b)(1). When considering these opinions, ALJs should look to the same factors enumerated above, found in 20 C.F.R. § 416.927(b) & (c). An ALJ, when arriving at the RFC assessment, "must always consider and address medical source opinions [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996); *see also* *Puckett v. Colvin*, 2014 WL 1584166 at *9 (N.D. Ohio April 21, 2014) (Vecchiarelli, M.J.) (explaining that, although the ALJ was *not* required to evaluate opinions of consultative examiners with the same standard of deference as would apply to an opinion of a *treating source*, he was required to "acknowledge that [the examiners'] opinions contradicted his RFC finding and explain why he did not include their limitations in his determination of Plaintiff's RFC").

The ALJ addressed the State Agency psychologists' opinions as follows:

> As for the opinion evidence, the undersigned accords partial weight to the opinions from the State agency psychological consultants. On April 9, 2015, Joseph Edwards, Ph.D. reviewed the claimant's records and opined that he could work in a routine environment without strict production standards, with brief conventional contact with others, without public contact, with infrequent changes,

with access to a supervisor for support as needed, and with major changes explained ahead of time and implemented gradually (Ex. 2A/9-11). Irma Johnston, Ph.D. reviewed the case record on August 14, 2015 and assessed the same mental residual functional capacity (Ex. 4A/9-11). Dr. Edwards and Dr. Johnston are acceptable medical sources with substantial expertise and experience in making such assessments on the record and knowledge of the Social Security disability rules and regulations. Moreover, their opinions are consistent with the medical evidence of record, discussed extensively above, to which they cited and summarized in support of their assessments. Therefore, the consultants' opinions receive substantial weight. However, the consultants also stated that the claimant "may require occasional flexibility for shifts and breaks," which receives little weight because it is vague and unsupported by the record (Ex. 2A/10; 4A/10). Nevertheless, the vocational expert testified that some flexibility for shifts and breaks is allowed in most competitive employment, as long as the claimant completes his duties and fulfills the total required work hours.

(Tr. 23-24).

The decision adequately explains why one of the so-called "limitations" assessed by Drs. Edwards and Johnston was only partially adopted and incorporated into the RFC. The explanation requirement applicable to non-treating sources is not as rigorous as the good reasons requirement of the treating physician rule. *See, e.g., Moscorelli v. Colvin*, No. 1:15cv1509, 2016 WL 4486851 at **3-4 (N.D. Ohio Aug. 26, 2016) (Lioi, J.) (observing that a thin explanation that would not constitute a good reason for discounting a treating source's opinion may, nevertheless, satisfy the explanation requirement for a non-treating source). Again, a Palintiff's mere disagreement with the ALJ's explanation as to why little weight was assigned to a non-treating medical source does not provide a basis for remand. *See, e.g.*, *Steed*, 2016 WL 4479485.

In addition, Plaintiff ignores the equivocal nature of the opinion in question. To the extent Plaintiff portrays Drs. Edwards and Johnston's opinions as an affirmative finding that Plaintiff *will* require occasional flexibility for shifts and breaks, such an assertion would be inaccurate. Both psychologists state that Plaintiff "*may* require occasional flexibility for shifts and breaks" due to anxiety. (Tr. 73 & 87) (emphasis added). The ALJ's decision, when addressing this

statement, carefully retains the non-committal language employed by the State Agency psychologists. (Tr. 24). Plaintiff cites no authority suggesting that an ALJ errs by failing to incorporate a medical source's ambiguous statement that simply avers certain limitations may (or may not) be necessary. Further, there was nothing unreasonable or insufficient with respect to the ALJ's above quoted explanation. *See, e.g., Honaker v. Colvin*, No. 1:14-CV-2487, 2015 WL 5559888 at *8 (N.D. Ohio Sept. 21, 2015) (White, M.J.) (finding no error where the ALJ did not adopt an equivocal and "non-committal" medical opinion that certain symptoms "*could* result in attendance or decision-making issues.") To treat the *possible* limitations floated by Drs. Edwards and Johnston as an affirmative finding that the need for flexibility in shifts was mandated would improperly alter the contents of the medical source's opinion.

Finally, to the extent Plaintiff argues that the RFC is not supported by substantial evidence because the VE's testimony was imprecise as to the number of jobs available (R. 15, PageID# 490), the court disagrees. A claimant's RFC is an indication of an individual's work related abilities *despite* the person's limitations. *See* 20 C.F.R. §§ 404.1545(a).[6] Therefore, it is the ALJ who bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c). Testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's

---

[6] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, *the claimant's RFC*, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)).

At the November 15, 2016 hearing, the ALJ posed the following hypothetical question to the VE:

> I'd like to assume a hypothetical individual who can work at all exertional levels, who can perform tasks in a setting with occasional changes that can be explained in advance and implemented gradually, and where there is flexibility for shifts and breaks. The person can perform goal-oriented work but cannot work at a production rate pace, and he can briefly interact with supervisors and coworkers if that interaction is limited to speaking and signaling as it is defined in the SCO, but cannot interact with the public. Are there any jobs in the economy available for this person, and if so, can you give me a few examples?

(Tr. 58).

The VE testified that such an individual could perform a number of jobs offering the following examples: order puller, medium, SVP 2, Dictionary of Occupational Titles ("DOT") 922.687-058 (300,000 jobs nationally); laundry laborer, medium, SVP 2, DOT 361.687-018 (160,000 jobs nationally); and, janitor, medium, SVP 2, DOT is 381.687-018 (800,000 jobs national). (Tr. 58-59). The VE indicated his testimony was consistent with the DOT. *Id.* In response to questions from Plaintiff's counsel, the VE testified that he did not view the requirement for "flexibility for shifts and breaks" as an accommodation. (Tr. 60).The following testimony was elicited concerning flexibility in breaks and shifts:

> Q      Okay. So if somebody required flexibility with, if it was a requirement for them, wouldn't that be an accommodation?
>
> A      Oh, I don't think that's necessarily an accommodation. If someone such as a laundry laborer position needs to take a break, you know, the same time break at 2:00 instead of 3:00 I don't think it's going to be a major concern. Or if someone is doing housekeeping/cleaner the same thing. The break that they take as long as they get their work done and they work the same amount of hours would provide flexibility for that employer.

Q      What about with the shifts though? So it's not even just the breaks, it's also I mean if we're talking about shifts it's the, it's the work schedule itself that may require flexibility.

A      Well, that's a little different. If they can't be there at a specific time period that would eliminate a lot of jobs.

Q      Would it eliminate all jobs or would it be an accommodation?

A      I don't think it's an accommodation, there are some jobs where, you know, some, some people come and go as long as they get the job done and as long as they're putting the amount of hours in. But I don't, I don't think I would be able to quote those jobs or the numbers.

Q      **So we can't provide job numbers for jobs that require flexibility in terms of shifts**, is that —

A      That degree of flexibility, **yes**.

Q      Well what, what degree of flexibility —

A      Well, gave an example. Much more than that I think would be difficult for an employer to tolerate.

ALJ:   So hang on, Mr. Burkhammer. Okay, so is there a job available for someone who requires flexible shifts?

VE:    Working at that one there's an awful lots of jobs, Your Honor, I mean you can find them here and there but for most of the full-time jobs that I would quote there are expectations that somebody's there on time and that they leave on time. As far as the flexibility given as far as breaks are concerned that's a little bit more tolerable.

ALJ:   Okay.

(Tr. 60-61) (emphasis added).

Plaintiff argues that the VE's inability to provide a specific number of jobs for individuals who require flexibility in shifts indicates "the record in this case is at best devoid of whether 'significant numbers' of jobs exist in the economy that an individual with this limitation can perform." (R. 15, PageID# 490). Plaintiff's argument ignores the fact that the ALJ's ultimate

RFC assessment retained only the need for "flexibility for breaks," and eliminated any requirement for flexibility in *shifts*. (Tr. 24). Therefore, the VE's inability to provide numbers for a hypothetical individual who required flexibility in *shifts* was rendered moot by the exclusion of any such limitation in the RFC. Moreover, while the testimony could have been somewhat clearer, the VE's testimony can reasonably be interpreted as standing for the proposition that the need for flexibility in breaks does not impact the number of jobs previously identified. As such, Plaintiff's argument does not establish the need for a remand.

### IV. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/*David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: March 25, 2019